Good morning, Your Honor. Stephanie Adraktis on behalf of Jerry Cavins by appointment. Mr. Cavins has retained a personal stake in the outcome of his petition for writ of habeas corpus despite his release from custody in 2004. Is it correct he's not in custody now and he's not under any parole conditions? He's a free man in Oregon? That is correct, Your Honor. And is his only beef that if he were to move to Nebraska, which he doesn't declare any intention of doing, then things would be worse for him because of the revocation? Your Honor, I guess I wouldn't put it exactly that way because there are more states than Nebraska that would require risk assessment. Has he filed a declaration that shows he has an intention or a need or a plan to move to any of them? He has not, Your Honor. And I think that's the same issue for him as it would be for any citizen. We don't know where we're going to move in the future or what our intentions might be. And for those reasons, he has, I would submit, a personal stake and a liberty interest in preserving the opportunity and option to move to those places without suffering serious adverse consequences that is being assessed a person of medium or high risk to the community due to a revocation that unfairly resulted in his incarceration for seven years. And so I would submit that it's not simply one state that's doing this. We have included in our papers evidence that Nevada, New York, New Jersey, among others, have shifted the focus of their registration and notification procedures from simply taking into account someone's conviction to actually assessing them as an individual now as to whether they represent a low, medium, or high risk to the community. It appears to be that he has his right to travel. It's a constitutional right, and it has been infringed, if you will, or it's been limited. And this is a collateral consequence. Then I suppose that would mean that he would have a basis for proceeding with his habeas petition, seeking to have his recommitment set aside due to ineffective assistance of counsel. Is that right? There are three claims in his petition. One is ineffective assistance at the revocation hearing. Another relates to ineffective assistance and absence of counsel in his subsequent reviews. Because he was kept in confinement for the maximum possible term, I would submit in part due to the fact that his counsel withdrew without notice to him, and from that time forward he had no counsel at all. But the thing is, would he still be a convicted sexual offender if you would have it like that, and would he still be subject to these registration requirements in these other States? His convictions would stand despite any court order invalidating the revocation, but he would stand before any court or adjudicating authority determining his risk in a totally different light, because absent this revocation, he would have a demonstrated presence in the community of 17 years without any law violations or any violations of any kind. So, yes, he would have to register, but my point is that I think any fair adjudication of his risk level would be of a low risk absent this revocation, whereas with the revocation, he looks very different. And he has a right in the States that do have a fair adjudication and do have risk assessment to contest the assessment of his risk. And there are States, including New York and New Jersey and Oregon, which have held that you have a right to appeal a determination of your risk level, you have a right to appear at those risk level determinations with counsel to offer evidence to show that any evidence that is being offered to allege that you are of medium or high risk is not valid or accurate, and that you have a right to appeal a determination of your risk level. And Mr. Cavens could use an order of the Federal court adjudicating the revocation is invalid to demonstrate that he is not of risk. This sounds to me kind of analogous to the thing that the Supreme Court has spoken of a lot in environmental cases like Lujan, where a person says, I don't want the government to do something that they plan to do in some park. I've never been there. I never plan to go there. I have no expectation of ever being there in my life. But nevertheless, I don't like them doing it, because what if one day I just changed my mind and decided I wanted to go there? And the Supreme Court has held no standing, no case for controversy, no Federal jurisdiction under Article III. Your Honor, I'm not familiar with the environmental cases, but I think Mr. Cavens' right to travel and to be free of adjudication and public broadcast of the opinion of authorities that he is a medium or high-level risk to the community is of a fundamentally different kind. Because going to a national park or a place for recreation is fundamentally different from your right to your anonymity, your privacy, and to not be held up to public scorn or ridicule if you go to a place for whatever reasons, because there's a job there for you, family members, whatever reasons. Mr. Cavens has those interests, which I think are very fundamentally different from ones that you would invoke to recreation in a particular area. And in these, in the cases that I have put before the Court that show, and the statutes that show how these risk-levels... The analogy I was drawing was not really to the importance of the interest, but to the speculativeness of the harm. The speculativeness, I think the issue here really has to do with his freedom, his right to preserve the opportunity to go to these places that have these assessment statutes. And so although he has not said he wants to go to these places, his concern, which I think is natural, is that if this petition is dismissed as moot, and he does decide to move to Nebraska, Nevada, Maine, New York, New Jersey, a large number of places, that he would be subject to public notification based on information that is wrong. If we actually got past mootness, is it correct that, as I think your response to Judge Thompson indicated, that our inquiry, if we got past mootness, would just be on whether his lawyer did a lousy job handling his revocation, because his lawyer left him exposed to these risks in states that he had no intention of going to? Well, that would include the Court's determinations to whether he was prejudiced in any ineffectiveness determination. And the prejudice analysis would have to include a determination of whether the outcome would have been different. In other words, in a fair adjudication, Mr. Cavens would not have been revoked and sent back to the hospital. And so given his very, very long-term record of program compliance, and given the record here showing that he had not demonstrated a resistance to treatment, I would submit that he could prevail in such a determination, and with an order of that kind, could be presented to authorities in any risk assessment adjudication for the rest of his life. And it would preserve his right to say to those courts and those authorities, I am not a risk to the community. Without such an opportunity to adjudicate this, if the petition is declared moot, he will never have an opportunity to do that. The problem here, I think, is that it's not fair to require of him that he actually move to another state in order to preserve his opportunity to adjudicate the issues. You may want to save a little time. Thank you, Your Honor. Thank you, counsel. Good morning. May it please the Court. Brian Smiley representing the Respondent, Bill Lockyer. Mr. Cavens' argument distills down to a position that he could conceivably be subjected to a risk assessment in the future. And then if he is subjected to such a risk assessment, that assessment might take into account the fact that a decade ago he was transferred from outpatient treatment to inpatient treatment. We don't dispute that. It's conceivably possible. But Article III requires something more than that to have a live controversy. He hasn't shown that there is some actual continuing injury he's suffering right now. Let me ask you this question because we have to paint on a little broader canvas. I mean, I understand your argument in this context. But in the immigration context, with federal immigration enforcement, we have a case called Blancarte Alvarez. And in that case, the defendant argued that because he'd been deported, the United States had no right to appeal his sentence. Now, the United States had been convicted of the United States. He had a sentence. The United States appealed a portion of that sentence. And in the meantime, he'd been deported. And the defendant said, no, I've been deported. I'm outside the United States. I'm under an order not to return to the United States. And we said, no, it's not moot. You could return to the United States voluntarily or involuntarily at some point, and therefore the case isn't moot. How can we reconcile? And I know this isn't in the briefs, and it's a different context, so I apologize. I should have had this thought earlier so that I could have communicated it and you would have had a little more time to think about it. But how can we reconcile that case and that line of cases where we say, you're outside the United States, you're under an order not to come back, but it's not moot because you might come back, even though it's illegal for you to come back, with this where he says, well, I might want to go to Arizona or Nebraska or something like that. Isn't it sort of the same thing in terms of a mootness analysis? Well, off the top of my head, the one difference would be that I assume that this person who has now been deported is receiving notice. Apparently he litigated the issue, so he did receive notice that there are judicial proceedings ongoing in the United States in which you are a defendant and you could be subjected to injury if you don't come forward or at least send an attorney in to represent your interests. I don't think that Cavins has a similar situation because when he goes to some, he's the one who's in charge of going to some other state. It's all up to him. I'll say it was up to Plancarte Alvarez to decide whether to illegally come back in the United States, voluntarily or involuntarily. He was deported. And we said, no, it's not moot. He might come back. There was not even any indication that he wanted to come back or that he was under any freedom to come back, unlike, you know. Well, in there, the government's taking a proactive step to try and put criminal sanctions on him. Here, the government is not doing so. Why does that make any difference in terms of a mootness analysis, though? Because there's no injury. The deported individual faces an injury. There's going to be a judicial proceeding in the United States that could hurt him, hurt his rights. Cavan's face is none unless he moves to some other jurisdiction, and then they subject him to risk assessment. That's all I can do off the top of my head. Yeah, very good. One of the key cases I think that both parties have briefed is Cardi v. Nelson from this court, where a petitioner, a sexually violent predator, was found to have a live controversy. I just wanted to quickly address why that case is distinguishable. You have to compare in Cardi. He was found an SVP and subjected to a duty to register every 90 days, and if he didn't, he was going to be sent to jail for a year. The analogous, the thing you have to compare with Cavan's, is his duty or his ongoing risk assessment. So Cardi's duty to register is what you compare with Cavan's duty to register. I mean, Cavan's duty, his being subjected to risk assessment. Since Cardi had a duty to register, he was challenging in his Federal habeas action the commitment that resulted in that duty to register. If Cavan, if Cardi won, his duty to register would be, would vanish. He would no longer have this one. Let me make sure I understand what you just said. Under Cardi, he was not free to just live happily ever after without being bothered by the government. He had to go in every 90 days and fill out papers? Correct. He had a continuing ongoing duty every 90 days to register to and also inform them of his employment status. Cavan's is not analogous because he doesn't presently have any duty or he's not being subjected to any risk assessment at this time. And even if he were subjected to risk assessment, we don't know for sure that that risk assessment would take into account his decade-old transfer back to Atascadero Hospital. My argument just boils down to, although that there is a possibility and we can see that there is a possibility that at some point in the future, Mr. Cavan's could be subjected to risk assessment, and it's possible that risk assessment might take into account his transferred inpatient treatment, that's not concrete enough for Article III, for the case in controversy requirement. If there are no further questions, I'll submit it. Thank you, counsel. Cavan's v. Lockyer is submitted. Oh, I'm sorry. You had some time. As to whether or not the revocation would be considered, I have provided in the excerpts of record several of the actuarial and checklist type of instruments that would be used to do a risk assessment. And in particular, if you look at Nebraska's, there is a 20-point consequence to a person who is being evaluated with that checklist based on whether or not they had treatment violations. And I've also provided the static 99 summary of how that is an actuarial instrument that's used to do risk assessment that takes into account whether a person, whether convicted or not, has done anything that resulted in their being accused of that by law enforcement. It appears, based on the documents I provided, that the allegation that my client had possessed or had lived in a trailer that had some child pornography and it possessed by another person would be sufficient to count as a sex offense under the static 99, which is a widely used instrument to assess risk and one that has been adopted in the state of Oregon where Mr. Cadence currently lives. And finally, I would point to language in the Spencer v. Kemner case that talks about threatened collateral consequences, not just ones that exist right now. And here I think there is enough of a threat based on the adoption of these kinds of Mr. Cadence does have a continuing strong personal interest in adjudicating his petition. But the odd thing is that he can avoid the threat completely by just staying where he is. And absent an intent to move in the real world, it doesn't seem like there's much of a real injury out there. I think that he has the same interest in preserving his right to move freely about the country as any other citizen, and if he is prevented from adjudicating this petition, it will significantly confine his freedom of movement for the rest of his life. Like anyone else, he cannot now say, you know, I know for sure that I want to move to a particular place, but I think our courts have recognized that that is a significant personal liberty interest to have that option. And that is what he is trying to preserve here is the freedom to do that without facing very serious adverse consequences that would be based on an adjudication that he has strong claims was unfair. Thank you, counsel. Cadence v. Lockyer is submitted.
judges: Thompson, Kleinfeld, Thomas